Good morning and welcome to the Ninth Circuit. Please excuse my voice, I've got a terrible cold. Judge Clifton and I would like to welcome to the bench for the first time, we've sat with him, our new colleague, Judge Miller. We've got four argued cases this morning, the first of which is Candler v. Santa Rita Cty Jail Watch Cmdr. When you're ready. Good morning, Your Honor. My name is Riley Keenan and I'm appearing on behalf of Mr. Candler, the appellant in this case. I'd like to reserve three minutes of time for rebuttal if I may. Keep your eye on the clock. It counts down. Will do. As a pretrial detainee, Mr. Candler was held in solitary confinement for 908 days without ever being given a reason for his confinement or an opportunity to discuss it with jail officials. During that time, Candler was isolated from nearly all human contact and given limited opportunities to exercise, shower, and clean his cell. In granting summary judgment to the defendant's jail officials, the district court held that these conditions did not amount to violations of Candler's constitutional rights. That was error. The law of this circuit has been clear since 1996 that a pretrial detainee is entitled to some degree of process, at the very least, notice and an informal hearing, before being housed in long-term solitary confinement. Indeed, this court has recognized that convicted prisoners are entitled to process under these circumstances, and under clearly established Supreme Court law, a pretrial detainee who has been convicted of no crime has at least the rights of a convicted prisoner. Candler's deprivations of exercise, showers, and sanitation also amounted to independent constitutional violations under clearly established Ninth Circuit law. The district court's contrary decision should be reversed, and the case remanded for a trial on Candler's constitutional claims. Counsel, with respect to your procedural due process claim predicated on a constitutionally protected liberty interest, what precisely is the right that you, Mr. Candler, had that you think was violated in this case? Your Honor, the protected liberty interest was freedom from long-term solitary confinement. And that liberty interest derives from two sources. The first is the Constitution, and the second is expectations created by State law. The constitutionally derived liberty interest — Well, let me be clear on what the right is. You just said there's a right to be free from long-term solitary confinement. I know of no such right. The question is whether he has process that led to that, as I understand it. That's correct, Your Honor. It's a protected liberty interest in freedom from long-term solitary confinement. Well, but is there really a right to be free from solitary confinement, period? In fact, if there are grounds for holding somebody in solitary confinement, there's not a right that's being violated. That's correct, Your Honor. What the procedural due process right means is that if a detainee is to be held in long-term solitary confinement, first the proper procedures need to be afforded. So — and the reason why is because a pretrial detainee who has, again, been convicted of no crime has a liberty interest in — within the meaning of the due process clause in not  And when the confinement — I mean, there are a lot of cases, and you cite a lot of them, about procedures that are required for punitive confinement. But when, as here, the confinement is for administrative purposes, what case would you point to as clearly establishing the right to be free from administrative segregation without process for pretrial detainees? The Hewitt v. Helms case, which dealt with a convicted prisoner but also dealt with administrative segregation, clearly established the procedures that were required in this case. And because it is also clearly established as a matter of Supreme Court law that a pretrial detainee's rights are at least as great as those of a convicted prisoner, it follows from Hewitt v. Helms that the same procedures are due to a pretrial detainee. And the Fourth Circuit held as much in the Williamson case. But Hewitt was about rights created by state law, and I understand you have that component of your claim as well, but with respect to the federally constitutionally recognized liberty interest, I don't see how Hewitt clearly establishes that. So what can you point to for that component of your argument? Hewitt had two separate holdings. First, it dealt with a liberty interest, with recognizing a liberty interest using its explicit mandatory language test, which has since been abrogated by Sandin. But the second holding was that once a liberty interest is established, the level of process due under the general test for procedural due process set out by the Supreme Court in Matthews v. Eldridge is that certain procedures need to be followed. And that holding applies regardless of what the source of the liberty interest is. So our position is that Hewitt v. Helms clearly establishes the process due, even though its holding as to the liberty interest has since been abrogated by Sandin. So Hewitt establishes what the process is, and what's the case that establishes that there is a constitutional liberty interest for a pretrial detainee and freedom from non-punitive administrative segregation? Your Honor, the case in this circuit is Mitchell v. Dupnick, which is a 1996 case that states, I quote, the right of pretrial detainees to a due process hearing before they are restrained for reasons other than to assure their appearance at trial was recognized in that case. But we said that in the context of a disciplinary segregation, didn't we? I mean, I did that. That's correct. Mitchell v. Dupnick was a disciplinary segregation case. However, the language from Mitchell and the reasoning of Mitchell relied on prior Supreme Court cases, United States v. Salerno, which dealt with a non-disciplinary context. That was the Bail Reform Act. That was a non-disciplinary law that would result in detention for non-disciplinary reasons. So Mitchell's reasoning was predicated on this idea that whenever a pretrial detainee is restrained for reasons other than to assure the detainee's presence at trial, at least some level of process is due. Now that idea has been cited by this Court in the Schroeder v. Baca case, which recognized – which cited Mitchell for the proposition that a pretrial detainee who was detained for reasons of alleged mental instability was entitled to a due process liberty interest. So this Court has recognized the broad sweep of this statement from Mitchell. And that's what clearly establishes the constitutional liberty interest at issue here. But of course, I mean, I guess the – I mean, he's already detained, right, because he's in jail. So what is the test that – I mean, in the – when you're talking about a state-recognized state-created liberty interest, we have the Sandin test. But for this federal liberty interest that you're relying on, what is the test that identifies the sort of detention that would trigger the right that you're invoking? Your Honor, it would have to be derived from the language of Mitchell, and it would have to – and it would have to involve an analysis of whether the detainee was being restrained. So in Mitchell v. Dupnick, it was restraint – it was being placed in solitary confinement for disciplinary reasons. In this case, it would be placed in – being placed in solitary confinement for administrative reasons. Our position isn't that the due process clause kicks in whenever a detainee is denied an accommodation that the detainee would like. The right attaches when the detainee is restrained for purposes other than securing his appearance – his or her appearance at trial. I've got – I've got a – almost a who's the right defendant question with respect to the classification defendants. Your client says nobody ever interviewed him. They just put him straight in the ad seg, and that was the end of it. We've got evidence from Hankin and Schlegel and others that they did the proper procedures. Hankin says, I interviewed him when he came in, and so on. If your client's telling the truth, they're lying. Why are they the proper defendants even if they're lying? That is to say, if they're lying, they didn't do the interview, but they're not necessarily the people who directed that he go straight to the hole without an interview. They just didn't do it. So how do we know that they're the right defendants? Your Honor, because those defendants claim in their declarations that they made the decision to continue housing Candler in solitary confinement after each of his file reviews. So each of the classification defendants – Yeah, but I'm assuming for purposes of where we are right now that they're lying, that they just didn't do it. Well, Your Honor, Mr. Candler has no personal knowledge of whether the cold review of the files ever took place. I know, I understand that, but I'm trying to figure out how we know who directed, according to your client as to what happened, who directed that he go to the ad seg without any hearing. How do we know that Hankin did that? All we know is that Hankin says, I interviewed him. And that, according to your client, is a lie. That's correct, Your Honor, but Schlegel, Matende, and the other defendants all claim that they reviewed Mr. Candler's files and they give reasons for the decisions that was made to house him in solitary confinement. So it's clear from these declarations, you know, Mr. Candler does dispute that the interview has ever happened, but he has no personal knowledge of the reasons for his confinement and he has no personal knowledge of ... Actually, I think he has no personal knowledge as to who directed that he go straight to ad seg. Well, right, but these defendants are claiming that they are the ones who made that decision. So that would be the basis on which Mr. Candler would seek to hold them liable for this decision. Returning to the issue of the liberty interest at issue here, the second source of the liberty interest that Mr. Candler asserts is his state-created rights. So those state-created rights, they derive from the Supreme Court's decision in Wilkinson which recognized a procedural due process, right, a procedural due process liberty interest to be free from long-term solitary confinement for convicted prisoners. And the established principle that, again, a detainee's rights are at least as great as those of a convicted prisoner. So if the Supreme Court held in 2005 that a convicted prisoner has the right to be free from long-term solitary confinement, I don't think the statement tells it. You know, before your time runs entirely, could you speak briefly to the conditions of confinement? Did they just say the so-called grievance defendants? Yes, Your Honor. The — Mr. Candler raised a genuine issue of material fact as to several violations. I think the one that I'll address now with my limited time is the deprivation of exercise that occurred. Mr. Candler grieved in August 2009 that he was only being provided two hours of exercise every week. Per week, yeah. Every week. But this Court's held in the Pierce case that at least five to seven hours per week, that is one hour of exercise per day is the constitutional minimum. And so you're saying the district court just made a mistake in reading Pierce's saying that two hours was enough. The district court did make a mistake in reading Pierce, Your Honor. Pierce involved an action to rescind an existing preliminary injunction — or, excuse me, not a preliminary — to rescind an existing prison injunction requiring two hours of exercise every week for the detainees at issue in that case. It did not hold that two hours was the minimum. It simply declined to rescind that. And with that, I see that my time is up. Well, if you want to save some, that's right. Okay. And I'll save some time, unless the Court has further questions. Thank you. Good morning, Your Honor. My name is Jill Sazama, and I represent the appellees in this case. To save time, I won't list them all by name. May it please the Court. When Appellant was a pretrial detainee at Santa Rita Jail from June 2008 until September 2010, it was not clearly established that he possessed a protected liberty interest against being classified into administrative segregation for non-punitive, legitimate administrative reasons. This is the rule from Belvey-Wolfish. A pretrial detainee may not be punished, but absent an expressed intent to punish, conditions rationally imposed for legitimate administrative reasons arising out of safety and security of the inmate, other inmates, and the facility as a whole are not punishment. But how do we establish that those conditions apply? Does the jail just get to make it up and not talk to him, not have a hearing? I understand that those are reasons why he may be put in ADSEG, but is there no procedural requirement that those be determined in a regular way? Well, Your Honor, the position, as you know, of the appellees is, the classification appellees especially, is that he did receive process. We obviously have a dispute over that. But our problem, and I think this is worth focusing on, because we're in a pretty large digression here as to whether there's a certain right when, in fact, this seems like an extremely simple case, but a simple case based on facts. But because the case hasn't gone to trial, we're dancing on the head of a pin trying to figure out whether there was a given right created. So I think you have to assume at this point, although the evidence might seem pretty strong on behalf of defendants, at this point, we can't look to that, can we? Well, Your Honor, I know that the Scott v. Harris case is not a favorite, but I submit that there is objective evidence that contradicts the claim that Mr. Candler is making, which is essentially he was put in that saying and no one else was. But that's not really the argument you've made, though. That's not the basis the district court granted summary judgment, was it? And I don't really see that argument being made to us in the papers. Well, the argument is being made, at least I believe there have been two sets of briefs in this case. That's true. But the argument is that the appellees did provide him with process and there's evidence to undermine the claim that he was never informed of the reasons for his assignment into administrative segregation in the form of his own recorded statements. And the fact that while he was a pretrial detainee, he was also filmed in a documentary, which I think is extremely rare in any case before this Court. I couldn't find one where you can see, the Court can see his cell, he's communicating and there was a classification officer present. But not to sidestep your question, Your Honor, absolutely, and this, the position that appellees are taking here is essentially because we, upon reviewing the case authority, it didn't seem to me that it was clearly established that there was a protected liberty interest under the particular facts of this case, which the Court has already highlighted, which is a non-punitive administrative decision. I mean, there is just no evidence here. In fact, there is no intent on the part of any appellee to punish Mr. Candler. This was entirely an administrative decision based on very serious facts. But let me make sure I understand your argument. You're saying that so long as there are reasons for putting him in AD-SIG that are non-punitive, the jail can do it in whatever fashion it wants without having any kind of hearing. Is that correct? Is that your position? Well, that is not how the jail actually does things. I know, but that's what I think I heard your argument to be. You are correct, Your Honor. That's a pretty extreme position. I understand that there's an administrative right to put him in AD-SIG. I get that. And I understand the reasons why the jail puts forward as to why it can do that. They make perfect sense to me. What doesn't make sense is the jail doesn't have to have any procedures at all to determine whether the reasons are borne out, in fact, in the particular case. I understand that, Your Honor. I don't disagree with your concern over that. And once more, that is not how things are done at the jail. I just don't want to go to trial because it's a darn pain in the neck. And you're likely to win at trial on this point. The problem is at the moment, we've got evidence on the other side that I think we've got to take as true. Well, Your Honor, I, again, the court is going to decide the burdens that have to be balanced here appropriately, I'm sure. I believe that the fact that Mr. Candler acknowledged in a recorded phone call that he placed for two days in jail, the day you get in and the day you get out, and he acknowledged that the reason why he was in ADSEG is because he's such a critical leader or a political leader, whatever you want to call it, that he, it was too dangerous for him to be housed elsewhere because he could be a target for violence, and that is exactly one of the reasons. He also acknowledges that his knowledge of the DA's request based on the violence of the gang and the concern of harm to witnesses, he acknowledged that both in a grievance that he submitted and in his papers in this case. So, but I hear, Your Honor, it is a very challenging case. I'm well aware of that, and that's why we're making a qualified immunity argument, which I think the court should sustain. So if he were, if he had been serving a sentence following a conviction rather than being a pretrial detainee, would there be a constitutionally created liberty interest such that he would have a right to process before being placed in administrative segregation? Well, Your Honor, I think that would depend upon the particular facts. I do not believe, for example, looking at the Wilkinson case, that the conditions here that were grieved would rise to the level of creating a state-created, which is what that court held, a state-created liberty interest because the conditions here were different. I can go through those if you, if the court's interested, but he was given time out of his cell, he wasn't, the lights weren't on 24 hours a day, he had natural light, he had access to the law library, he had access to the telephone, he had access to television, he had all the things. Was the time for that access limited to the time, I guess the term that's been used is his pod time? His pod time, yeah. And so the argument, as I hear it, is that, well, yes, he may have had access to an array of things, but with such limited time, that that didn't actually make for meaningful or acceptable access. Well, the... Is it, I'm sorry, first factually, is it true that all the accesses that you've just mentioned, are those limited to pod time? The, yes, the access, except for obviously the natural light and the lights being off, but that... But the law library, the exercise, the access to cleaning supplies, the shower, all of that within the period of time that he's allowed out of his cell. Correct. I, the law library question, I'm not sure of, and this is outside of the record of this case, but my knowledge from representing this client is that those materials, I think, are other than being in pod time. So I believe that access was available regardless. I think what really, the complaints had to do, the grievances had to do with exercise, with showers, and with access to cleaning materials to clean up his own area. Correct. And all of those are tied to the time that he's allowed out of his cell. Correct. Correct. And the, I want to point out to the court, with respect to the grievance unit appellees, that the grievance regarding time out of his cell was sustained, and there was effort made to make sure that he would receive the jail minimum, which was five hours, which is above the time that the court has held to be constitutional. So... Can we come, can we focus on that for a moment? Absolutely. In terms of what the constitutional requirement is. The district court seemed to think that the constitutional requirement was only two hours per week. Is that right? I... I thought it was something, I thought it was closer to five, or five to seven. I thought it was, my recollection was I thought it was three, but the evidence, when they reviewed the grievance, and there's evidence in the record that shows this, he received three hours of time based on the jail zone records, but, which was constitutional. I believe it was three at the time, and I, but I could be mistaken, and it was sustained because it wasn't the five hours that the jail's policy holds, and so he was... Let me ask it this way, and this assumes, in fact, it's his way, and assumes a constitutional standard that you're not quite conceding yet. Let's assume a constitutional standard that is a minimum of five to seven hours of exercise per week. He grieves he's only getting two. One of the grievance officers writes a directive to somewhere else in the jail that says, fix this, and then nothing happens. Has the grievance officer fulfilled his responsibility by writing a note that has no effect? Well, I believe that the grievance unit officer has no, he's not deliberately indifferent to Mr. Candler's rights if he behaves in the way Your Honor just described. None of the appellees had day-to-day contact with Mr. Candler. They didn't, they weren't responsible for doing, so that's my answer. Does that mean that we just need a different defendant, the person who got the note and did nothing? I mean, because if you take my assumption that he only got two, and he's constitutionally entitled to five to seven, there's a constitutional violation. The only question is who's responsible for it. That's true, Your Honor. If that's what the law says, then that would be the way the court would go, but there is no, yes, there is no appellee. Even if it were three hours. If the three hours is a right to exercise, but he's given three hours of pod time, which includes the time for showering and other things, doesn't sound like he's got the three hours for exercise either, because sometimes it's going to be taken up with the other things. Well, my, I didn't, I understand you, I have the same sort of uncertainty as to exactly what the standard is, but the lowest number I've heard is three, and it sounds like on an ongoing basis, the record suggests that he didn't get three hours for exercise because he had to use some of that time for showers and other things. Well, the, I haven't drilled down into when they say three hours for exercise, if that's exclusive of doing anything else during that time. My understanding of the time for exercise was simply in the case of someone in ADSEG is being out of your cell and doing whatever you choose to do. Well, but there's, I mean, if personal hygiene, if taking a shower is something that is expected to come from that time, we're not talking de minimis, I mean, showers probably aren't all that long, but it's a pretty serious bite out of the time. Now, the cases haven't talked about it in the same way, and that's part of our quandary here, but if the suggestion from the cases is that we're talking about exercise time and it may not mean 180 minutes, I mean, there's time for back and forth, and so maybe you can take a shower after working out or something, but there's a kind of a big question mark is wherever the constitutional standard is, there's at least some basis of evidence to suggest that he wasn't getting it. Well, Your Honor, the evidence before the court is there were three grievances submitted, and the last one was in August of 2009, and then there were no more grievances for a year and four months. When was the response that acknowledged that the grievance had substance? I did not bring that. It was within, this is off the top of my head, I believe it was within the month, the same month that he grieved it, but I could be mistaken. That's my recollection of when those grievances were responded to, and it's clearly noted that that part of the grievance was affirmed. So, are you suggesting we take something from the fact that there were no subsequent grievances filed? Well, I'm saying that under the PLRA, there's a requirement that the matter be grieved. Now, I understand the court may say, well, he did grieve it once. And appeared to win. Yeah, exactly, and it was affirmed, and with respect to, again, we're focusing on, as Your Honor mentioned, we're focusing on these particular defendants, and the particular defendants you're referring to with respect to that grievance, Appellee Snyder affirmed it and took corrective action. Well, took corrective action is a, but nothing got corrected, so I'm not sure it's very effective corrective action. Well, on the other hand, Your Honor, it could have been, we don't, what we know is that he never grieved it again, even though when he grieved it once, he was successful. Now, so I, we can, you can look at it either way, I'm not saying your interpretation is inaccurate. If we take his evidence, he says it wasn't corrected. And no appellee would be in a position to know that. Could I ask you one more question on the procedural due process? So, the argument you heard from your friend on the other side is that there's a lot of law about administrative segregation for convicted defendants as requiring some level of process. And so even if we don't have a case specifically about administrative segregation of pretrial detainees, why isn't it enough that there's a general principle that pretrial detainees ought to have at least as much procedural protection as convicted defendants? And you put those two principles together and that clearly establishes the rule that they're invoking. Well, I believe, for example, if you look at the case of Wilkinson, which was a convicted prisoner case, the court in that circumstance first off recognized per metum that there was no constitutional protection inherent in the Constitution. So then they turned to the state-created liberty interest and held under the state-created liberty interest that there, and the conditions that that individual particularly experienced, they found that there was a liberty interest. And again, the focus was on those conditions in particular. I believe what they said was the indefinite nature and the law. I want to say perhaps there was a loss of good time credits. I could be getting my cases mixed up. And the court highlighted that the initial conditions, which they described as typical to any solitary confinement, might not in and of themselves be sufficient to create a liberty interest. But if you take into account these additional conditions, then a liberty interest was created. In my mind, Your Honor, I feel that the most important consideration is the question of is there an intent to punish? And Wilkinson wasn't an intent-to-punish case, which I believe makes it sort of more on all fours with ours. But a number of cases were punishment cases in terms of an evidence that there was punishment. It was disciplinary, like Mitchell v. Dupnick. And one more point. The Bell case highlighted that there was more than just the interest in assuring someone at a detainee's presence at trial that was relevant. There were also the legitimate administrative reasons for ensuring the jail's safety and security. And my concern is that if the court were to find a liberty interest here when there was no evidence of any intent to punish and where the reasons for his classification are legitimate, it would be opening up. We'd go back to the world of Hewitt, which is what the Supreme Court rejected in Sandin when it restricted the state-created liberty interest. Okay. Thank you very much. Thank you, Your Honor. You've saved some time. Your Honor, I have a few points I'd like to make with the time I have remaining. The first is in response to the idea that this Court should pause before recognizing a liberty interest here because of the Bell v. Woofish case. That case was a substantive due process case. What Mr. Candler's procedural due process claim is asking is simply to give a pretrial detainee an informal hearing and a reason for detention. It's not calling into question the underlying justification. Assume that he's entitled to a hearing. There's an argument on the other side that there's enough evidence that he's lying that we can disregard his statement that he got no hearing, that is to say he's been recorded as saying these other things that appear to be somewhat inconsistent with his statement that he does. They just put him straight in the hole. They never give him a reason. He has no idea why he's there. Why is there a contested issue of fact? Your Honor, the reason why there's a contested issue of fact here is because there's evidence on both sides of the issue. My question is it may be that he has so undermined his own evidence by his own statements that we don't have to believe. In fact, we can't believe it. Your Honor, I think the main reason why the Court should be crediting Mr. Candler's sworn testimony in the district court about what happened is not only that it's sworn on penalty of perjury, but also that it's buttressed by his contemporaneous written grievances. So he was saying this as it was occurring. He has documentary evidence that he wasn't being given the proper procedures required. So it's not as though he's just making this up now. Well, when he makes his procedural grievance, what does he say? Does he say, they never talked to me, or does he say he's improperly classified? He says, no reason has been given to me as to why I've been placed in solitary confinement. And so that's a quote from his grievance. And so that establishes that he wasn't given the proper procedures. And so that brings me to my second point, which is that the Court needs to be aware that this case is up on summary judgment. So the fact that it's over. But if he's given no reason, how come he then says, here's the reason why I'm here? Is he just making that up? Your Honor, there's no evidence in the recorded statement, the recorded phone call, that shows where he got that information. He could have got it from another jail official who told him that that was why he could have got it, but who wasn't responsible for making the decision, which wouldn't satisfy his procedural due process rights. And there's also nothing in the phone call that suggests that he was given the process required, which was notice of the reasons for his detention, for his confinement, and an opportunity to contest them. And just briefly, Your Honor, if I may, the third point is on the claims against the grievance defendants. As Your Honors noted, the grievance claim was sustained, but nothing happened. And there's evidence in the record showing that the violations that were grieved continued after the grievance was sustained. So the fact that the grievance was actually sustained is just more evidence of deliberate indifference on behalf of the grievance defendants. Well, it does still leave us wondering who the defendant should be. And I understand your client's not in a good position to try to point to who it is that didn't respond, but what do we do with that? Your Honor, there is, so it may be true that there's someone else who is But that doesn't mean that the grievance defendants who are also deliberately indifferent to the violation shouldn't also be held liable, if the court has no further questions. Thank you. Thank you very much. Before we finally submit this, I would like to acknowledge and thank, on behalf of the court, Mr. Keenan, you're doing this pro bono, is that correct? The court is very appreciative of lawyers who come in and do these arguments pro bono. It's very helpful to the court. It makes a decision better. It doesn't mean you're going to win. And I would also like to thank Mr. Zama, although you're getting paid. You work for the state, so maybe not that much. Case is submitted. Thank you.
judges: W. Fletcher, Clifton, Miller